69  147
115  682

# State of Alabama *v.* Lott.

*Suit by the State on Bond of Tax Collector.*

1. *Tax collector; with what amount chargeable, and to what credits entitled.*—The tax collector, on his settlement with the auditor, is *prima facie* chargeable with all the taxes shown by the assessment book to be due the State; and the only uncollected taxes for which he can be allowed credit, are those contained in the lists of errors and insolvencies reported to, and allowed by the court of county commissioners, and the taxes for the payment of which lands were sold by him; and in the latter case, he must account for the proceeds of sale.

2. *Same; failure to collect a breach of his official bond.*—The duty of collecting the taxes is as imperative on the collector as is the duty of honestly accounting therefor, when collected; and a failure to collect, within the period prescribed by law, the taxes which, under the law, he is required to collect, is a breach of the condition of his official bond, equally with a failure to pay over the taxes when collected.

3. *Same; § 414 of Code of 1876 construed; when final settlement must be made.*—Under section 414 of the Code of 1876, it is the duty of the collector, on or before the first day of May of each year, to make a final settlement with the auditor of the taxes of the preceding year, and to pay over to the treasurer the balance due from him on account thereof; and a failure on his part to make such settlement and to pay over such balance on or before that day, whether resulting from his want of fidelity in accounting for the money collected, or from his want of diligence in collecting, is a breach of the condition of his official bond, casting upon the obligors the duty and liability of making compensation for any injury sustained therefrom by the State.

4. *Interest; what it is and when recoverable.*—Interest in this State has long been regarded, not as the mere incident of a debt, attaching only to contracts, express or implied, for the payment of money, but as compensation for the use or for the detention of money. Whenever it is ascertained that at a particular time money ought to have been paid, whether in satisfaction of a debt, or as compensation for a breach of duty, or for a failure to keep a contract, interest attaches as an incident.

5. *Same; when recoverable from tax collector.*—Where a tax collector fails to make a final settlement with the auditor, on or before the first day of May, of the taxes of the preceding year, and to pay over to the treasurer the balance due from him on account thereof, as required by section 414 of the Code of 1876, he and the sureties on his official bond are liable for interest from that day on the balance then due from him to the State on account of such taxes.

6. *Auditor has no authority to waive payment of interest due from tax collector.*—The auditor, in making a settlement with a tax collector, has no authority to waive the payment of any interest which the collector may owe the State, or to release him from liability therefor.

APPEAL from Mobile Circuit Court.

Tried before JOHN ELLIOTT, Esq., Special Judge.

[State of Alabama v. Lott.]

- This was a suit on the official bond of Elisha B. Lott, as tax collector of Mobile county, brought by the State of Alabama against him, and Nelson W. Perry and others, his sureties on said bond, and was commenced on the 28th October, 1880. On 15th June, 1881, a demurrer to the complaint as originally filed, having been sustained, the plaintiff filed an amended complaint. The complaint as amended contains ten assignments of breaches of the condition of the bond, all of which are based on the failure of Lott to make final settlements with the auditor on the first days of May, 1879 and 1880, of the taxes for the years 1878 and 1879, for each of which years balances are claimed to be due from him as such collector, and also interest thereon from the first days of May, 1879 and 1880 respectively. The pleadings are lengthy, and, as the questions decided by the court were raised on the trial, as well as on the pleadings, it is unnecessary to set them out. On the trial the plaintiff read in evidence the bond sued on, which was in the form prescribed by the statute; and also the original abstracts of the assessments of real and personal property and polls in Mobile county for the years 1878 and 1879, which were returned and certified to the auditor by the judge of probate, and which show the taxes assessed for State purposes for each of said years.

" The defendants then introduced evidence showing, that on the last Saturday in each month from October, 1878, to January, 1881, inclusive, defendant, E. B. Lott, made a report under oath to the judge of probate of Mobile county of the taxes for the year 1878, collected by him during such months, and at the same time paid over to the State treasurer every dollar of such State taxes actually collected by him during such month (except the school fund money and poll taxes, which he duly paid to the officer authorized to receive the same), first deducting the commissions and fees allowed him by law ; and that on the 14th day of February, 1881, he had a final settlement and accounting with the auditor of the State for the whole amount of such State taxes for 1878, as the same was charged against him on the books of the auditor, and on the same day paid to the treasurer of the State $172.72 in full payment of taxes due from the County of Mobile for the year 1878, according to the auditor's certificate; also, that on the last Saturday in each month from October, 1879, to April, 1881, inclusive, said Lott made a report under oath to the judge of probate of Mobile county of the taxes for the year 1879, collected by him during each month, and at the same time paid over to the State treasurer every dollar of such State taxes actually collected by him during each month (except the school fund money and poll taxes, which he duly paid to the officer authorized to receive the same), first deducting the commissions and fees allowed him

[State of Alabama v. Lott.]

by law; and that on the 27th day of May, 1881, he had a final settlement and accounting with the auditor of the State for the whole amount of such State taxes for the year 1879, as the same was charged against him on the books of the auditor, and re-ceived from the auditor a certified transcript from such books showing that he had made an over-payment of $95.22 on such taxes for the year 1879, and that such amount was carried to the credit of said Lott for the year 1880." The evidence also showed the amounts paid by Lott to the State treasurer on the taxes for each of the years 1878 and 1879, *prior to*, and also the amounts of said taxes paid by him to the State treasurer *after*, the first days of May, 1879 and 1880, respectively, and the credits to which he was entitled for "errors and insolvencies," and for taxes for which lands were sold and bid in by the State, and for commissions to himself and the assessor, for each of said years.

It was also shown by the evidence, that no charges of inter-est against Lott were made on the books in the auditor's office, and that on the settlements which Lott made with the auditor, the latter did not charge up to, or collect from, the former any interest whatever, but that the settlements were made "by the said Lott's paying the amount of the principal of said taxes for 1878 and 1879, without taking into account interest on any sum." There was also evidence tending to show that the au-ditor did not remit or intend to remit the right of the State to interest, in the settlements made by him with Lott. The bill of exceptions then states: "There was no evidence of any wrong conduct or default on the part of said E. B. Lott in the matter of the collection of said taxes for the years 1878 and 1879, other than what is to be inferred, if any, from the fact of the non-collection and non-payment to the State at earlier dates than the payments were made. Nor was there any evidence tending to show why the taxes for 1878 and 1879, paid after the first day of May, of 1879 and 1880, respectively, by said Lott, were not collected and paid prior to the times they were collected and paid." It was also shown by the evidence, that the defendants paid all the costs of this case prior to the amendment of the complaint.

This being all the evidence, the plaintiff asked the court in writing to charge the jury, among other things, (1) that if they believe all the evidence, they must find for the plaintiff; (2) that the State taxes are due from the tax collector on the first day of May of the year following that for which the assessment is made, and that the State is entitled to recover interest on all taxes not paid by that day, unless some legal excuse is shown by the collector for the non-payment; and (3) that the auditor has no power to remit or release the right of the State to inter-

est.  The court refused these charges, and then charged the jury, at the written request of the defendants, "that if they believe all the evidence, they should find for the defendants," and the plaintiff excepted.  There was a judgment for the defendants, from which the plaintiff appealed, and here assigns as error, among others, the rulings above noted.

GUNTER & BLAKEY, and MACARTNEY & CLARKE, for appellant.—(1). The taxes are due from the tax collector to the State on the first day of May of each year, and he is then conclusively presumed to have collected such as he does not show by legal excuse are uncollectible.—Code of 1876, §§ 414 *et seq.*; *Timberlake v Brewer*, 59 Ala. 108.  There is no substantial difference between the statute of 1868, under which the decision in *Timberlake v. Brewer*, *supra*, was made, and §§ 414 *et seq.* of the Code of 1876.  Under each a *final* settlement is to be made on the first day of May of each year.  It is no legal excuse for a failure to make such settlement at that time, that the collector did not collect, as it was his business to collect, and no legal excuse is given for not doing so.  (2). The State is entled to interest on taxes not collected and paid over by the first day of May succeeding the tax year:—Code, § 2089; *The People v. New York*, 5 Cowen, 331; *Langdon v. Castleton*, 30 Vt. 285; *Chevallier v. State*, 10 Texas, 315.  (3). The auditor had no power to remit the interest due from Lott to the State, or to release him from liability therefor.—*Haehnlen v. Commonwealth*, 13 Penn. St. 617; *Van Dyke v. The State*, 24 Ala. 81; *McElrath v. United States*, 12 Otto, 426; *Cooke v. United States*, 91 U. S. 397; *Bayne v. United States*, 93 U. S. 642; *United States v. Bank of Metropolis*, 15 Peters, 377; *State v. Brewer*, 61 Ala. 318.  (4). The auditor, in making the settlement, made a mistake in not charging interest, which does not prejudice the State.—*State v. Brewer*, *supra*.  The principal was not paid, because the payments should have been applied first to payment of interest.—*The People v. New York*, *supra*. But even if it were paid, it was paid after suit brought, which does not stop the action for interest.—*Fishburne v. Sanders*, 1 Nott & McCord, 242.

BOYLES, FAITH & CLOUD, *contra.*—(1). The revenue law of 1868, under which *Timberlake v. Brewer*, 59 Ala. 108, was decided, is very different in its provisions touching the settlement by tax collectors with the auditor, from the Code.  Under the former, on a final settlement with the auditor, the tax collector is required to pay to the treasurer " the balance of taxes *due* from the tax payers in his county;" while under the Code (§ 414), on such settlement he must pay to the treasurer "the

balance of the taxes *received or collected* from the tax payers in his county." The change thus made avoids the presumption ·that, after the first of May, the collector had collected the *whole* amount of the taxes, as decided in the case *supra.* · The taxes remaining uncollected on the first of May are not lost to the State, nor is the collector required to pay them out of his own funds; but he may proceed with the collection of taxes afterwards and account therefor monthly. This provision is a part of the condition of the bond, and it is satisfied when the collector pays over on the first of May the taxes *received or collected* by him. This is what the appellees stipulated to do, and what has been done, as shown by the evidence; and their liability can not now be enlarged by construction or implication. *Van Epps v. Walsh,* 1 Woods C. C. R. p. 606; *Johnson v. Flint,* 34 Ala. 673; *Haden v. Brown,* 18 Ala. 641; *Leggett v. Humphreys,* 21 How. (U. S.) 75; *United States v. Knight,* 14 Peters, 301; *Douglass v. Douglass,* 21 Wall. 98. Interest was therefore not recoverable in this case. (2). But on another ground interest is not recoverable. If, under the Code, Lott was required to pay the whole balance *due* from the tax payers on the first of May, his failure to do so would have been a breach of mere official duty, and only such damages as are commensurate with the breach could be recovered. No interest could accrue until the "compensation" for such default. had been *estimated in money.* And then interest would be chargeable only upon such "*estimated compensation,*" and not on the amount *due* from the defaulting tax payers. Such an amount can not, in any just sense, be said to be the "*estimated compensation*" for such breach.—Code of 1876, §§ 2088, 2089; *Perry Co. v. Railroad Co.,* 58 Ala. p. 569. (3). The whole amount of the principal has been paid. The money was accepted as payment and full settlement of the *principal;* no interest was charged on the auditor's books, and no payment was applied to interest, but *expressly* applied to the *payment* of the *principal.* This suit now being for interest merely, we submit that it can not be maintained after payment of principal.—*Tillotson v. Preston,* 3 Johns. 228; *Southern R. R. Co. v. Town of Moravia,* 61 Barb. 180; *Stevens v. Barringer,* 13 Wend. 639; *Gillespie v. Mayor,* 3 Edwards' Ch. 512; *Jacot v. Emmett,* 11 Paige, 142; *Bank v. Mayor,* 4 Hun. (N. Y.) 429; *American Bible Society v. Wells,* 68 Me. 572; *S. C.,* 28 Am. Rep. 82.

BRICKELL, C. J.—Taxes for the current year are due on the first day of October. Until that time, of the tax payer they are not demandable. From that time until the first of January succeeding, the collector has the right to demand them, and on the tax payer rests the duty of paying on demand. The col-

lector, after having given thirty days notice, is required to attend in each precinct of the county, at the place of voting, at least twice, during the period intervening from the first of October to the first of January, for the purpose of receiving the taxes. On the first of January, if the tax payer has failed to pay, the taxes become *delinquent;* he is subject to charges and penalties, and to compel payment the collector may resort to the levy and sale of property, real or personal. During the first week in January the collector must account to the auditor, under oath, for the whole amount of State taxes by him collected up to that date, first deducting the commissions and fees allowed him by law. On or before the first of May, "he must make a final settlement with the auditor, and pay over to the treasurer the balance of taxes received or collected from the tax payers in his county; and he must also account to the auditor, and pay over to the treasurer, all moneys received by him from sales of land, and account to the auditor for lands bought in for the State."

The book of assessment of taxes, after the assessment has been examined, and errors, if any, corrected by the court of county commissioners, is by the judge of probate delivered to the tax collector. The delivery, it is intended, must be made before the first day of October. The book shows the name of each tax payer, so far as known, the taxes assessed against him, and whether the tax is assessed on real or personal property, and the poll tax, if any, is assessed. In the event of a tax upon property the owner of which is unknown, the property and the amount of the State tax is shown by the book of assessment. If, in the course of the performance of the duty of collection, there are errors in assessment discovered, or there are persons from whom the collector is unable to make the taxes assessed, a statement or list of such *errors and insolvencies,* as they are termed in the statute, he is bound to report to the court of county commissioners at the April term of the court. After examination of the list or report, so far as correct the court allows it, and the probate judge having certified the lists as allowed, the auditor is required to give the collector a credit therefor on his final settlement.

The assessment book delivered to him by the judge of probate, is the warrant and authority of the collector to receive and to collect the taxes. *Prima facie,* when the time appointed for him to collect has expired, he becomes chargeable with all the taxes shown by it to be due to the State.—*Timberlake v. Brewer,* 59 Ala. 108. Every agent or trustee charged with the duty of collecting debts, becomes chargeable with such debts upon the expiration of a reasonable time for collection, there being evidence of the ability of the debtor to pay. If there be

[State of Alabama v. Lott.]

any sufficient reason for the failure to collect, the *onus* of proof rests upon him. The default is shown *prima facie*, when it is shown that he received the evidence of the debts, assumed the duty of collecting; the ability of the debtor to pay, the opportunity for the performance of the duty having been afforded, in the absence of all evidence in explanation, the conclusion is irresistible, either that the debts have been collected, or that the failure to collect is negligence, a want of the diligence the agent or trustee was bound to exercise. The statute having prescribed a particular period within which the collection of taxes must be made; having afforded the collector ample remedies to compel payment within that period; and having provided him with a remedy to obtain credit for all taxes which are uncollectible, the result is inevitable that on the expiration of the appointed period, he is chargeable with all taxes appearing on the assessment book, it is not shown by the lists of *errors and insolvencies* were not collected. There is no authority to relieve him from liability for any other taxes, with the exception of taxes on lands sold for the non-payment of the tax assessed, and then he is chargeable with the proceeds of sales. Whether he has collected the taxes, other than such as are embraced in the list of *errors and insolvencies*, can not affect his liability. The condition of his official bond is, that he will perform *all the duties of the office which are, or may be, required by law*. The bond operates as a security, not only for honesty in paying over the moneys actually received, but for skill and the measure of diligence the law exacts in collecting. The real intent of the official bond, expressed in the few words in which the statute requires the condition to be written, is, that the collector will, with fidelity, skill and diligence, perform the duties of the office, and keep inviolable the trusts reposed in him. The condition of the bond is broken, whenever there is default in the performance of duty, not capable of excuse, or for which excuse is not shown. Whatever of damage or injury accrues to the State from the breach, is at that instant recoverable, and the duty and liability to make compensation then rests upon the several obligors, principal and sureties. The failure to collect is a breach of the bond, equally with a failure to pay over the moneys collected. The duty of collecting is as important as the duty of paying honestly. The one duty is precedent to the other.

The statute contemplates, indeed, in express terms requires, that on the first day of May of each year the collector shall make a final settlement with the auditor of the taxes of the preceding year. Whatever of taxes he has not paid previously, must then be paid, or an account of them given. The taxes which are not to be paid at that time, and for which an account

[State of Alabama v. Lott.]

is then to be given, are taxes on lands which the collector has sold, and lands bought in by the State for the taxes. As to these, he accounts for the proceeds of sale; but for all other taxes, save *errors and insolvencies*, he must account in money. If he has not collected them, the failure is attributable to his negligence, and for negligence he is as liable as for moneys received. The payment of them can not be delayed without converting the settlement into a partial, instead of a final settlement; and for a partial settlement at that time the law furnishes no authority. The partial settlement, and the only partial settlement contemplated, is the settlement the collector is required to make during the first week in January.

There is, as is urged by the counsel for the appellee, a change in the language of the present revenue law from that found in former laws. The former laws, in express words, required that on the final settlement with the auditor, the tax collector should pay over to the treasurer the balance of the taxes *due the State*. The present statute employs the words "the balance of the taxes *received or collected* from the tax payers." These words are employed in connection with an imperative requisition that the settlement shall be *final*, which it can not be, if the liability for which the collector accounts, is only for the moneys actually collected by him, and he gives no account, is held to no liability for the taxes he has not collected, the failure to collect, being the result only of negligence and the violation of official duty. Besides, it would empower the collector to select his own time for the collection of taxes, instead of collecting them within the period appointed by law. It would enable him to defer, and to fix a time for a final settlement, variant from that the law prescribes in terms which are imperative. It was doubtless supposed by the legislature, that the collector would be diligent in the performance of duty, and would within the time prescribed, a period of seven months, have collected the taxes, and be ready to pay them to the treasurer. But if he has not collected them, if he has neglected his duties, and by the neglect made himself chargeable with them, a legislative intention to acquit him of liability can not be deduced from these words. The intention was, that if he had disappointed the expectation of the legislature, if he had not performed his duty, he should account for the neglect of duty according to the condition of his bond.

The collector being chargeable on the first day of May, for all taxes he has not previously paid into the treasury, other than such as are embraced in the lists of *errors and insolvencies*, or such as are accounted for in consequence of the sales of lands, the point of contention between the parties is, whether interest attaches to the liability. Interest, in this State, has

been long regarded not as the mere incident of a debt, attaching only to contracts, express or implied, for the payment of money, but as compensation for the use, or for the detention of money.   Whenever it is ascertained that at a particular time money ought to have been paid, whether in satisfaction of a. debt, or as compensation for a breach of duty, or for the failure to keep a contract, interest attaches as an incident.— *Whitworth v. Hart*, 22 Ala. 343; *Boyd v. Gilchrist*, 15 Ala. 849; *James v. Governor*, 1 Ala. 605.   The true and just doctrine is expressed in *Dodge v. Perkins*, 9 Pick. 36·, approved in *Boyd v. Gilchrist*, *supra*, that, " the inquiry is, whether the party has done all that the law required of him in the particular case, whether acting on his own account, or as agent, executor, administrator, or trustee for others.   If he has, he is not accountable for interest; if he has not, he is accountable for it, as a compensation for the non-performance of his contract."   The duty resting upon the collector was the payment of the taxes on the first day of May.   The official bond was a security for the performance of the duty at that time; its condition, though written in general words, embodied a pledge to perform the duty.   The failure to perform was a breach of the obligation of the bond, damnifying the State.   The damage was the failure to receive in money on that day, the moneys which the collector ought to have paid.   The moneys are detained, and for the detention compensation must be made.   The duty of compensation on the part of the collector, and the right to it on the part of the State, are the same in character and degree, as if the collector had withheld and used moneys he had collected.   The injury the State suffers from the failure to receive the moneys it has the right to receive at an appointed time, is the same, whether it results from the collector's want of fidelity in paying over moneys he has actually received, or his want of diligence in collecting.   For the injury, the State in either case has a clear legal right to compensation, and interest is the measure of the compensation.

Whether on the final settlement with the auditor made after the institution of this suit, and after the time appointed by law for its making, he exacted, or waived the payment of interest, is unimportant.   The law fixes the measure of the liability of the appellees, and from that liability they can not be discharged by the *laches*, by the waiver, or by the express agreement of any public officer.   The duties of the auditor are as carefully prescribed by the statute as are the duties of the tax collector; and within these duties is not comprehended that of waiving or contracting away the rights of the State, or of compounding with its debtors, though he is charged with the duty of making

settlements with, and holding some officials to accountability. The rulings of the Circuit Court were inconsistent with these views and its judgment is reversed and the cause remanded.