CITY OF ANN ARBOR *v.* MASSACHUSETTS BONDING & INS. CO.

TAXATION—FAILURE TO COLLECT TAXES ON PERSONAL PROPERTY—
CITY TREASURER—DEATH—EQUALLY DIVIDED COURT.
In action by city against surety on bond of city treasurer to recover taxes on personal property alleged to have been uncollected by treasurer who died two days before his term of office expired, judgment for defendant is affirmed by an equally divided court.

Appeal from Washtenaw; Campbell (Allan), J., presiding. Submitted June 9, 1937. (Docket No. 48, Calendar No. 39,327.) Decided December 14, 1937. Rehearing denied February 25, 1938.

Action by City of Ann Arbor, a municipal corporation, against Massachusetts Bonding & Insurance

Company, a Massachusetts corporation, on a city treasurer's surety bond. Judgment for defendant. Plaintiff appeals. Affirmed by an equally divided court.

*William M. Laird,* for plaintiff.

*Monaghan, Crowley, Clark & Kellogg,* for defendant.

PÒTTER, J.  Defendant was surety on the official bond of Theodore Schmidt, city treasurer of Ann Arbor, for the year from May 3, 1927, to May 3, 1928.  Schmidt died May 1, 1928.  This suit was instituted by the plaintiff city against the surety to recover taxes alleged to have been uncollected by Schmidt.  From judgment for defendant, plaintiff appeals.

The trial court held ''that where death intervenes during a term of office of one charged with the duty of collecting taxes, he cannot be charged with nonfeasance, because he did not have the full period of his term within which to discharge his duty.  This seems to be held in *Montgomery* v. *Governor,* 8 Howard (Miss.), 68, where the bondsman offered to show that the county treasurer died during his term.''

There is no question the treasurer made his return in March and received a warrant authorizing him to collect the unpaid taxes.  1 Comp. Laws 1929, § 3447, provides:

''The county treasurer shall give the township or city treasurer a statement of all the personal taxes which remain uncollected, taken from the return of the latter, with a warrant authorizing him or his successor to collect them according to law, and thereafter such treasurer or his successor shall have the

same power to collect such taxes as under the original warrant."

The undertaking of a surety is to receive a strict interpretation. The surety has a right to stand on the very terms of the contract. To the extent and in the manner and under the circumstances pointed out in his obligation, the surety is bound, and no further. The liability of the surety is not to be extended by implication beyond the terms of his contract. *Miller* v. *Stewart*, 9 Wheat. (22 U. S.) 680. A surety cannot be held beyond the precise terms of his agreement. *Walsh* v. *Bailie*, 10 Johns. (N. Y.) 180. As said by Chancellor Kent, "The claim against a surety is *strictissimi juris.*" 3 Kent's Commentaries (14th Ed.), p. 217. See, also, *Fellows* v. *Prentiss*, 3 Denio (N. Y.), 512 (45 Am. Dec. 484).

There is no question the death of the principal terminates the liability of the surety and the surety cannot be held liable for any defaults which may have occurred after the death of the principal. 50 C. J. p. 96.

The principal in this case had the full time fixed by his term of office within which to collect the delinquent taxes covered by his warrant. The surety's liability terminated at his death, and it could not be charged with any liability which had not accrued prior thereto. It is entirely immaterial what the length of time may have been between the death of Schmidt and the expiration of his term of office. The length of time makes no kind of difference. *Wilson* v. *Lloyd*, L. R. 16 Eq. 60 (42 L. J. Ch. 559, 28 L. T. 331, 21 W. R. 507) ; *Smith* v. *Shelden*, 35 Mich. 42 (24 Am. Rep. 529). The liability of the principal did not accrue during his lifetime. He was entitled to the benefit of his full term within which to carry out the terms and conditions of the warrant in his hands.

Had he lived, he might have caused a levy to be made under and by virtue of the terms of the warrant in his hands, under which a sale could subsequently be made, and he cannot be held guilty of nonfeasance because death deprived him of part of the time allotted to him by law for the performance of his duty.

Judgment of the trial court affirmed, with costs.

BUTZEL, BUSHNELL, and CHANDLER, JJ., concurred with POTTER, J.

FEAD, C. J. Defendant was surety on the official bond of Theodore Schmidt as city treasurer of the city of Ann Arbor for the year from May 3, 1927, to May 3, 1928. Schmidt died May 1, 1928.

In July, 1927, Schmidt received the city tax roll for 1927 with warrant for collection. The city charter provides that the warrant shall authorize the treasurer, in case any person named in the roll shall neglect to pay his tax, to levy the same by distress and sell his goods and chattels as provided in the general tax law of the State.

The general tax law, 1 Comp. Laws 1929, § 3437, provides that the treasurer shall call personally upon each resident taxpayer and demand payment of the taxes. Section 3438 provides that if any person shall neglect or refuse to pay his tax the treasurer "shall collect the same by seizing the personal property of such person," etc.

In accordance with the charter, Schmidt made return to the city assessor about August 15th. In November the city assessor delivered to him tax rolls and warrant for the collection of State, county, school and uncollected city taxes. Under statute, charter and extension of time by the common council it was Schmidt's duty to make settlement with the county treasurer and return all unpaid taxes on

March 1st. He made settlement and return on March 26th. In the return he made affidavit that, upon diligent inquiry, he had not been able to discover any goods or chattels belonging to the persons liable to pay the unpaid personal taxes whereupon he could levy the same.

Upon making his return, the county treasurer gave him a statement of the uncollected personal taxes with a warrant authorizing him or his successor to collect them according to law and with the same power as under the original warrant (1 Comp. Laws 1929, § 3447). The warrant commanded him to levy and collect the taxes of the goods and chattels of the persons named in the statement attached.

It is undisputed that there were some items of uncollected city personal taxes which could have been collected before Schmidt died, by levy on goods and chattels. He had asked payment from some of the persons assessed, sent bills to others, and made no demand on the others. He made no levy nor threat to levy. There was testimony that some of the taxpayers had sufficient property at different times during the period the treasurer had warrants for collection, out of which the taxes could have been made. As to some the testimony was confined to the period after he received the warrant from the county treasurer. As to others, there is some testimony as to their financial condition at other times in the year.

Plaintiff brought this action to recover the amounts of a considerable number of uncollected personal items on the ground that Schmidt's failure to collect them was nonfeasance in office and a breach of the bond. Defendant had judgment upon its contention that, because Schmidt died before expiration of his term, he could not be charged with nonfeasance as he had the right to a full term in which to do his duty.

A city treasurer and his surety are liable for taxes on personal property which the treasurer could have collected by due diligence but did not collect and which have been lost to the city. *School District* v. *City of Lansing,* 260 Mich. 405; *Ibid.* 264 Mich. 272.

"Failure of a tax collector to collect the legal taxes within the time required by law is a breach of the condition of his bond for which his sureties are liable, at least to the .extent of such taxes as were lost through his remissness or neglect, and where no reason, valid in law, for failure to collect is shown; but the sureties may show in mitigation, if not in bar of the action, any circumstances which made it impossible for their principal to effect collections or which would be a sufficient legal excuse for his failure to do so." 61 C. J. p. 1034.

"In general, a collector of taxes becomes chargeable for all taxes committed to him, in respect to which he has not exhausted his authority to enforce payment during the period allotted for their collection, if the town insist upon his liability, and require payment from him." *Inhabitants of Gorham* v. *Hall,* 57 Me. 58, 62.

Counsel have cited no cases in point. Defendant relies upon *Montgomery* v. *Governor,* 8 Howard (Miss.), 68, and also urges that, as an officer is presumed to do his duty, there is a presumption that Schmidt would have collected the taxes had he lived to the end of his term and so he cannot be charged with lack of diligence.

The *Montgomery Case* does not justify the contention that the death of the treasurer before the expiration of his term wholly acquits him of liability for noncollection of taxes. It merely holds the obvious proposition that his death may be taken into consideration in determining whether he was negligent. If, for example, during the time it was his

duty to make collection, the treasurer had made diligent effort to do so, his death would not charge him with lack of diligence or liability subsequent thereto. On the other hand, if he had neglected to make proper effort to collect while he was alive and collection became impossible thereby, his death would not forgive his delinquency. And it would be a violent and unjustified presumption that an officer who, for a long time and until his death, had failed to do what the law commanded, would have entirely reformed and become diligent the last two days of his term had he lived.

The liability rests upon the failure of the treasurer to use reasonable diligence to perform his statutory duties and to make collection during the time it is his duty to collect. It depends upon circumstances. They may establish a point of time before the end of the term at which his want of diligence would be established and liability become so fixed that it could not be discharged, except by subsequent actual payment by the taxpayer or the treasurer.

There was no testimony that Schmidt had so performed his duty in attempting to make collection while he was alive as to justify the ruling, as a matter of law, that his death had prevented his recovery of the taxes. The issue as to each of the claims, therefore, is whether, while Schmidt was still alive, his failure to make collection of the taxes was due to his own lack of diligence in the discharge of his official duty as defined by the statute and the taxes were lost thereby.

Judgment should be reversed and remanded for determination in accordance with this opinion, but without costs.

NORTH, WIEST, and SHARPE, JJ., concurred with FEAD, C. J.